IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

Kristie Burgess,                          )
                                          )    Civil Action No. 6:08-cv-3919-HMH-BHH
                        Plaintiff,        )
                                          )
        vs.                               )    **REPORT AND RECOMMENDATION**
                                          )    **OF MAGISTRATE JUDGE**
JHM Hotels, LLC and JHM Hotels            )
Management, Inc.,                         )
                        Defendants.       )
                                          )

        This matter is before the Court on the defendants' motion for summary judgment

pursuant to Federal Rule of Civil Procedure 56 . [Doc. 47]  In her Complaint, the plaintiff

alleges that the defendants[1] terminated her employment for the exercise of her rights under

the Family Medical Leave Act ("FMLA") of 1993, 29 U.S.C. § 2601 *et seq*.  She has alleged

a claim for interference with her FMLA rights and a claim of retaliation for taking FMLA

leave.

        Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and

Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases

are referred to a United States Magistrate Judge for consideration.

## FACTUAL BACKGROUND

        The defendants own and/or manage thirty-four hotels located in South Carolina,

Georgia, Florida, North Carolina, Illinois and Virginia.  (Rama Aff. ¶ 3.)  The plaintiff

previously worked for the defendants in their corporate office as the Regional Director of

Sales for the Carolina Region.  Her job was to oversee the sales efforts of the defendants'

hotels in that region.  The position was created for the plaintiff in May 2005 and the

---

        [1] The defendant JHM Hotel Management, Inc. contends that JHM Hotels, LLC is not
a proper party to the lawsuit, but the plaintiff has not agreed to any dismissal.  (Def. Mem.
Supp. Summ. J. at 1.)  The Court will refer to the defendants collectively, as "the
defendants" for purposes of this motion.

defendants concede that the plaintiff "excelled in it." (Rama Dep. at 148-49; Def. Mem. Supp. Summ. J. at 2.)

The plaintiff reported directly to the Regional Director of Operations, Daniel Barre′, and indirectly to James Browder, Vice President of Sales. (Rama Aff. ¶ 5.) The defendants break their areas of responsibility into "five stars," which are sales, profit, guest satisfaction, product quality, and associate satisfaction. The plaintiff was responsible for sales, while Barre′ was responsible for operations and the other four stars for the Carolina Region. Barre′ reported to Dharmendra Rama, Vice President of Operations for the defendants. *Id*. Plaintiff and Barre′ worked from home offices in Columbia, South Carolina, which were centrally located to the five hotels in the Carolinas Region (located in Greenville, Gastonia, and Charleston) for which they were responsible. (Pl. Dep. at 28, 30; Pl. Aff. ¶ 1.)

In March 2008, the plaintiff had ACL reconstruction (knee surgery), which necessitated time off and restricted her ability to travel. (Pl. Exs. 14-15; Pl. Dep. at 90-91). The plaintiff notified Barre′ of her surgery date immediately upon learning of it. (Pl. Aff. ¶ 3; Pl. Ex. 15). Barre′ in turn notified Cindy McPheeters, the defendants' Corporate Director of Human Resources, that the plaintiff was having "major surgery." (Pl. Ex. 15.) McPheeters responded: "we'll need to do an FMLA for her." *Id*. Upon her return, the plaintiff informed Barre′ that she was restricted from traveling. (Pl. Aff. ¶ 4.) Barre′ requested a note indicating that she was limited to administrative duties, which the plaintiff provided. (Pl. Dep. at 97-98; Pl. Ex. 12.)

Subsequently, the plaintiff developed deep vein thrombosis as a result of the surgery. (Pl. Aff. ¶ 5.) The plaintiff contends that she advised Barre′ and the vice president for sales and marketing, Jim Browder, of her diagnosis as soon as she learned of it; explained the regimen of daily shots she needed; advised of the weekly doctor visits that

would be required; and explained both her restrictions on driving (two hours per day) and the prohibition against air travel. *Id*.

The next week, the plaintiff's condition became worse, and she began to experience uncontrolled vomiting, dehydration, blood in the kidneys, severe stomach and back pain, swelling, dizziness, and weakness. (Pl. Aff. ¶ 7.) On Wednesday, May 21, 2008, the plaintiff e-mailed Barre′ from the emergency room to let him know that she was being hospitalized and later notified him concerning her serious complications. (Pl. Ex. 16; see Pl. Aff. ¶ 8; Pl. Dep. at 89, 91, 93, 99-100.) The plaintiff was absent from work for the balance of that week. (Pl. Ex. 17). Barre′ notified Rama and McPheeters. (Barre′ Dep. at 13-14 (Exh. 4)).

The defendants did not designate the plaintiff's leave for her March surgery or the subsequent hospitalization as FMLA. (Pl. Aff. ¶ 9.)

Upon her return to work, the plaintiff communicated her restrictions to Barre′. (Pl. Aff. 11.) The plaintiff contends that Barre′ was resistant to them and threatened to force her to take full-time leave if she could not give 100% at work. (Pl. Dep. at 43, 107-08.)

On May 30, 2008, the plaintiff complained to McPheeters concerning Barre′′s reaction. (Pl. Dep. at 55-56.) McPheeters informed the plaintiff of her FMLA rights, and, the plaintiff went on intermittent leave, effective June 2. (Pl. Ex. 20-22.)

The remainder of the plaintiff's allegations relate to actions of the defendants, which the plaintiff contends interfered with her ability to exercise her rights in FMLA leave; resulted in a poor evaluation and lesser bonus; and ultimately led to the termination of her employment. The details of these allegations will be addressed in greater detail below, in the context of the relevant legal analysis.

The plaintiff's employment was ultimately terminated, on September 11, 2008. The defendants have put forward evidence that they began experiencing a decline in business, most notably in the Carolina Region. (Rama Aff. ¶ 6.) As a result, the defendants contend

that they were forced to eliminate seventy-one (71) positions and also did not refill fifty-nine (59) positions vacated by employees, between February 2008 and June 2009. (McPheeters Aff. ¶ 3.)

The defendants represent that the Carolina Region was the smallest region, comprised only of five hotels. Other regions are apparently bigger and represent more hotel brands. (Rama Aff. ¶ 7.) The defendants indicate that reporting is more difficult in those regions because each brand of hotel requires different reporting, while reporting in the Carolina Region is limited to one form.

The defendant has emphasized Rama's explanation as to why the plaintiff's position was eliminated: "So as a company when we step back and look at cost reduction, this was one area where we felt that we will still be able to function within the region without this position . . . we already had existing manpower within this area that were underutilized." (Rama Dep. at 34-35.) The defendants, therefore, indicate that they decided to eliminate the plaintiff's position and to require Barre′ to perform her duties, with help from Browder. *Id*. at 35. Following this decision, Rama met with the plaintiff on September 11, 2008, to advise her that her position was being eliminated. The defendants contend that they have not refilled the plaintiff's position and have not intent to do so. *Id*. at 38.

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to

judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.  Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).  Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

The Court has found this case exhaustively complex.  The matter is fact intensive and the parties have significant disagreement both as to the events, themselves, and the quality of their relevance.  The Court has attempted to make thorough evaluation of the limits of the plaintiff's legal case and the defendants' concomitant defenses, while respecting the constraining axiom that accounts ought not be weighed.  Overall the call has been a close one and, for a case in the margins, the Court believes deference should be given to the full opportunity trial affords to resolve it.

## I.    Interference Claim

The plaintiff first contends that the defendants interfered with her rights under the FMLA in various ways.  Claims of alleged violations of an employee's prescriptive rights under the FMLA – known as "interference" or "entitlement" claims – arise under 29 U.S.C.A. § 2615(a)(1).  That Section states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."  *Id*.  The plaintiff alleges that the defendants interfered with her right to take FMLA leave insofar as they did not provide her with notice of her rights under the Act or properly designate certain of her absences as FMLA qualifying.  The plaintiff contends that the defendant refused to accommodate the restrictions arising from her serious health conditions by not affording her the arrangements and protections the FMLA provides in intermittent and reduced schedule leave.  *See* 29 C.F.R. § 825.203; 29 U.S.C. § 2611(9).[2]

---

[2]  The current version of the relevant Code of Federal Regulations was revised in 2009.  All citations in this recommendation will be to the appropriate prior version of the regulation at issue.

To state a claim for FMLA interference, an employee must prove that her employer: (1) interfered with the exercise of her FMLA rights; and (2) that such interference caused prejudice to the employee. *Reed v. Buckeye Fire Equip.*, 241 Fed. Appx. 917, 924 (4th Cir. 2007) (citing *Ragsdale v. Wolverine World Wide*, 535 U.S. 81, 87 (2002)); *Moticka v. Weck Closure Sys.*, 183 Fed. Appx. 343, 347 (4th Cir. 2006).

There appears to be at least two FMLA triggering or qualifying events. The first is the plaintiff's March 19, 2008, "major surgery." (Pl. Ex. 15.) The second is the subsequent development of a deep vein thrombosis (blood cot), in "mid-May" 2008, resulting from the March 2008 surgery, and related complications, including hospitalization. (Pl. Aff. ¶¶ 5-8.)

As to the March surgery, the plaintiff was absent from work for five days, returning on March 26, 2008. (Pl. Dep. at 90-91; Def. Ex. 14 at Burgess 0000010.) Afterwards, she was restricted from traveling, which she indicated to Barre′, in a note, at his request. (Pl. Aff. ¶ 4, Pl. Dep. at 97-98; Pl. Ex. 12.)

Regarding the blood clot, the plaintiff advised Barre′ and the Vice President for Sales and Marketing, Jim Browder, of her diagnosis as soon as she learned of it; explained the regimen of daily shots needed; advised of the weekly doctor visits that would be required; and explained both her restrictions on driving (two hours per day) and the prohibition against air travel. (Pl. Aff. ¶ 5.) It is not clear precisely when she was diagnosed with the blood clot or when she so informed the defendant. Subsequently, and sometime in mid- to late May, the plaintiff's condition allegedly became worse, however, and she began to experience uncontrolled vomiting, dehydration, blood in the kidneys, severe stomach and back pain, swelling, dizziness, and weakness. *Id*. ¶¶ 6, 7. As a result, the plaintiff was hospitalized on May 21, 2008. *Id*. ¶ 8. She called Barre′ from the emergency room on that same day. *Id*.

Upon returning to work, on May 26, 2008, the plaintiff reiterated her restrictions to Barre′. *Id*. ¶ 11. She contends that he rejected them as unacceptable and demanded that

7

she either work "100%" or take full-time FMLA leave and, further, that she was jeopardizing her job to do the latter. *Id*.

The Court would not artificially separate the two incidents, the March surgery from the subsequent complications, other than to organize, for better understanding, (a) how the respective parties' obligations were triggered and (b) how the prejudice suffered by the plaintiff, if any, might be reasonably allocated among the events, if at all, for purposes of a causation analysis. Neither of the parties have expressly discussed how the events should be considered – as discrete events, with distinct obligations, or a connected and continuing violation.[3] The Court would understand the plaintiff to view the defendants' actions as a systematic and ongoing interference with the exercise of her rights concerning a series of related, albeit different, health conditions.

The Court will take the triggering incidents in turn and also try and consider their common effect on the obligations and rights of the parties where appropriate.

### A. Interference Element (March 19 Surgery)

The defendant first argues that the plaintiff never gave proper notice of any need for FMLA concerning her March surgery. Such a showing would constitute a defense against the plaintiff's ability to establish the first element of her claim. If an employee fails to give proper notice, then the employer is relieved of its obligations under the Act and it cannot be said that the employer in anyway interfered with the employee's rights in FMLA leave. *See Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir. 2001). Specifically, the

---

[3] Frankly, the Court is not sure whether the difference is material. Application of a continuing violation theory is traditionally reserved for statute of limitations purposes and its propriety in FMLA cases has been called into doubt. *See Tafelski v. Novartis Pharms.*, 2007 WL 1017302, at *4 (E.D. Mich. Mar. 28, 2007). Regardless, the Court means only to anticipatorily raise as an issue, the prospect that the defendant may, in one moment, have interfered with the plaintiff's rights where no prejudice resulted and, in the next, continued to interfere but also produce actual prejudice. The Court will attempt to address the matter in greater detail below. Generally, however, it does not seem an oversimplification to say that conditions which qualify for protection of the FMLA trigger obligations and rights whenever they are rightly said to be present, whether part of a series of related events or discrete in nature.

defendant contends that the plaintiff never indicated the nature of her health condition, whether or not it was serious, and further complains that the plaintiff failed to put any request for FMLA leave in writing as required by company policy.

The FMLA requires that employees provide 30 days notice, or such notice as is "practicable" where "the date of treatment requires leave to begin in less than 30 days." 29 U.S.C. § 2612(e)(2)(B). In order to benefit from the protections of the FMLA, an employee must provide her employer with enough information to show that he may need covered FMLA leave. *See* 29 U.S.C. § 2612(a)(1)(D), (E); 29 C.F.R. § 825.302(c) (2008); 29 C.F.R. § 825.303(b) (2008); *Rodriguez v. Smithfield Packing Co., Inc.*, 545 F. Supp. 2d 508, 515 (D. Md. 2008) ("The core requirements for triggering an employer's obligations [under the FMLA] are [a covered reason for leave] and adequate communication, meaning a timely communication sufficient to put an employer on notice that the protections of the Act may apply."). Although the employee need not specifically mention the FMLA in requesting leave, she must provide enough information to suggest that her need for leave is for a covered purpose and must provide notice of the anticipated duration of the leave.[4] *Peeples v. Coastal Office Products, Inc.*, 64 Fed. Appx. 860, 863 (4th Cir. 2003) ("Although an employee need not specifically mention the FMLA in requesting leave, employers 'are entitled to the sort of notice that will inform them not only that the FMLA may apply but also when a given employee will return to work.'") (quoting *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir. 2001)). When timely and adequate communication is not given, the protections of the Act do not apply, even if the employee in fact seeks leave for a qualifying purpose. *See Collins*, 272 F.3d at 1008; *Rodriguez*, 545 F. Supp. 2d at 516.

---

[4] A qualifying medical reason is defined as "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is defined, in part, as an illness or impairment that requires continuing treatment by a health care provider, see id. § 2611(11)(B), and that also involves a "period of incapacity requiring absence from work ... of more than three calendar days," 29 C.F.R. § 825.114(a)(2).

As to whether the plaintiff delivered notice as soon as practicable, the defendant has not made any rigorous argument. By its express terms the prior version of the relevant regulations contemplated that "as soon as practicable" means within "one or two working days of learning of the need for leave, except in extraordinary circumstances . . . ." 29 C.F.R. § 825.303(a); Pl. Ex. 56. The plaintiff learned of her need for surgery on March 10, 2008. (Pl. Aff. ¶ 3.) She attempted, without success, to reach Barre′ that same day. *Id*. Notwithstanding, she spoke with him, at the very latest, on the following day, March 11, 2008. *Id*. The plaintiff had surgery on March 19, 2008. As stated, she returned to work on March 26, 2008. Thus, her notice, if given at all, was as soon as practicable, in the way the regulations expressly intends.

Concerning the contents of the plaintiff's notice, it is true that the record is not overly specific as to the details of any conversations the plaintiff had with the defendant concerning her March surgery and related health condition. (See Pl. Aff. ¶ 3 ("I exchanged emails with him on March 11 about the surgery and spoke with [sic] that same day.") Even still, the defendant's position as to notice – the plaintiff gave none -- is somewhat perplexing.

Unless the Court has somehow wrongly measured it, the evidence establishes unequivocally that the defendant was aware that the plaintiff's surgery implicated the FMLA. The defendant's Corporate Director of Human Resources, Cindy McPheeters, sent an email to the plaintiff's Regional Director of Operations, Barre′, on March 19, 2008, stating: "Daniel: Let's get together and we'll need to do an FMLA for her. I hope she is resting well. . . ." (Pl. Ex. 15.) Notwithstanding, the defendant has been incredulous, in its briefing, of any suggestion that it had been given notice of need for FMLA, to wit: "[T]here is no support of any FMLA leave situation [prior to June 2] despite the picture Plaintiff now attempts to paint in her Brief, which is totally unsupported by the record in this case." (Def. Reply at 7.) Elsewhere, the defendant dismissively argues: "She provided absolutely no

information to JHM to indicate that her condition was serious, choosing to take vacation time for the surgery that she described to her supervisor as outpatient." (Def. Mem. Supp. Summ. J. at 16.)  The March 19 email makes these accusations all but untenable.  The defendant has not attempted, in any respect, to reconcile the plain language of the email, that the defendant's Human Resources Director understood the FMLA implications of the plaintiff's condition, on March 19, with its current position that the plaintiff has no evidence of ever having placed the defendant on notice that she might need FMLA for the March surgery or even any time prior to the end of May/beginning of June.

As far as the Court can tell, the defendant's actual notice is *prima facie* evidence that sufficient notice *was*, in fact, given.  At worst, though, it would seem that actual notice would at least absolve any deficiencies in an employee's attempted but otherwise legally wanting notice.  The Court is unaware of any case where a plaintiff's interference claim failed for a technical deficiency in notice given, where the defendant nonetheless had *actua*l notice of the need for FMLA leave.  *Cf. Barrett v. Detroit Heading, LLC*, 311 Fed. Appx. 779, 794 (6th Cir. 2009) (distinguishing cases where the plaintiff was uncooperative or delinquent in giving notice from a situation where defendant had "had **actual** and constructive notice of that condition"); *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 725 n.8 (6th Cir.2003) ("'Even if notice to security did not constitute notice to Honda, we would conclude that Honda had **actual notice** of Cavin's potential need for leave' because Cavin's supervisor had actual knowledge of his condition . . . .").  This view is supported by the relevant regulations, which state that the timeliness and adequacy of notice are standards dependent on the facts of each case, such that courts should look to the totality of the surrounding circumstances to determine whether sufficient notice was given. *See* 29 C.F.R. § 825.303(b); *Scobey v. Nucor Steel-Arkansas*, 580 F.3d 781, 787 (8th Cir. 2009).  In other words, if it is found that an employer has reason to know, based on the totality of the circumstances, or otherwise has actual knowledge that a condition is FMLA qualifying, then there seems to be no basis

11

to deny the plaintiff her rights in FMLA leave, simply for the fact that had actual notice been absent, the plaintiff's efforts would have somehow not been enough, as a matter of law.

The plaintiff's cases do not suggest otherwise. Neither *Scobey*, 580 F.3d at 787-88 nor *Rask v. Fresenius Med. Care N. Am.*, 509 F.3d 466, 471 (8th Cir.2007) involved evidence that the employer *actually* knew of an FMLA relevant condition, in spite of legally failing notice. Rather, both of those cases simply involved notice insufficient, constructively and actually, to inform the employer of a serious medical condition. *See id.*

Here, by contrast, an email, dated March 19, 2007, creates, in the very least, an issue of fact as to whether the defendants were on notice that the plaintiff's condition and leave were covered by the FMLA. (Pl. Ex. 15.) Strangely, the defendants make reference to the March 19 email but only to emphasize that it had shown concern for the plaintiff's condition. (See Def. Reply at 8-9.) As far as the Court can determine, the defendant makes no effort to explain the email in the larger context of its version of the case that no notice was given. The Court does not believe that it has misevaluated the significance of the email. Surely, its presence raises a question about the sufficiency of the plaintiff's notice more suitable for a jury than at summary judgment.

So whatever technical inadequacies characterize the plaintiff's efforts, they are of no moment, insofar as a reasonable jury could find that the defendant *actually knew* FMLA leave was appropriate. Even still, the Court, out of thoroughness, will consider the defendants' other complaints concerning the ineffectiveness of the plaintiff's notice.

The defendant has also argued that the plaintiff's notice, if any, was verbal and not written as required by the defendant's policy.[5] (McPheeters Aff. ¶ 6.) At all times relevant

_____

[5] In truth, it appears that the defendants' policy contains no such requirement. It simply says, "Generally, an application for leave must be completed for all leave taken under this policy." (McPheeters Aff. at KBO787.) The word "generally" qualifies the statement and would, by force of its plain meaning, appear to make application non-mandatory. The statement certainly does not say anything about when the application must be made. Regardless, the requirement, whether mandatory or not, was more than the

12

to this case, however, verbal notice of the need for leave was sufficient, s*ee Rhoads v. FDIC*, 257 F.3d 373, 382-83 (4th Cir. 2001) (quoting 29 C.F.R. § 825.302(c)), and the defendant's company policy could not require more, *see Cavin v. Honda of America Mfg. Corp.*, 346 F.3d 714, 723 (6th Cir. 2003).  As the plaintiff notes, it appears that the defendant has relied on a more recent version of the Regulations, effective as of 2009, but not controlling at the time of the plaintiff's alleged need for FMLA leave.  *Compare*  29 C.F.R. § 825.303(c) with Pl. Exs. 55, 56.  To this point, the defendant has not responded. Accordingly, the plaintiff's alleged verbal conversations were sufficient.  (Pl. Aff. ¶ 3.)

Finally, the defendant contends that the plaintiff elected to take vacation leave over FMLA leave, such that she cannot be considered as having notified the defendant of any need for FMLA leave.  All the Court can say in this regard is that issues of fact remain.  The plaintiff does not dispute that vacation time was taken but adamantly highlights the fact that the defendants' own policy requires employees to "use vacation days while on FMLA leave." (Pl. Ex. 60 at KB787; see 29 USC § 2612(d)(2)(B) ("[A]n employer may require the employee, to substitute any of the accrued paid vacation leave . . . for any part of the 12-week period")).  The plaintiff has produced evidence that she actually submitted her vacation request at the behest of Barre'. (Pl. Aff. ¶ 10 (Exh. 11)).  Again, the defendant makes no reply.  To the Court, the fact that the plaintiff took vacation leave, on the record, would not, of itself, preclude a jury from concluding that the plaintiff had put the defendant on notice of the need for FMLA and/or requested the same.

Accordingly, the Court finds that a reasonable jury could conclude that the plaintiff gave appropriate notice of her need for FMLA.  To the extent it might, the plaintiff would then also have to demonstrate interference.  As the plaintiff contends, the defendant's very failure to apprise the plaintiff of her FMLA rights, upon effective notice, "constitutes

_____

defendants were permitted to impose, as will be discussed.

actionable interference." *Reed*, 241 Fed. Appx. at 924-25; *see* 29 C.F.R. § 825.220(b) ("Any violations of the [FMLA] or of [its governing] regulations constitute interfering with ... the exercise of rights provided by the [FMLA].").

The FMLA requires an employer to provide an employee requesting leave notice of his or her rights within a reasonable time, "one or two business days [after the request] if feasible." 29 C.F.R. § 825.301(c). If the employer learns of the employee's need after the leave has commenced, "notice should be mailed to the employee's address of record." *Id*. Such notice should include, as appropriate, indication "that the leave will be counted against the employee's annual" twelve weeks of leave protected by the FMLA, 29 C.F.R. § 825.301(b)(1)(i), and that the employee has the "right to restoration to the same or an equivalent job upon return" to work, 29 C.F.R. § 825.301(b)(1)(vii).

It is undisputed that the defendant did none of the above, principally, because the defendant now takes the position that it had no notice of the applicability of the FMLA, in the first instance. The Court believes issues of fact remain as to the plaintiff's interference element, concerning the March 19 surgery.

### B.    Prejudice (March 19 Surgery)

The Court, however, is less sure about the prejudice element of the plaintiff's claim, as it concerns the March surgery. The defendants have not really moved for dismissal on this ground – want of prejudice – although their Reply makes some appeal in this vein. (Def. Reply at 11-12.) As stated, any alleged interference must cause prejudice to the employee. *Reed*, 241 Fed. Appx. at 924. The plaintiff has put forward evidence that she suffered prejudice in the form of a substantially lower pay raise and ultimately termination of her employment. (Pl. Aff. ¶¶ 18, 27; Compare Pl. Ex. 35 (2% raise) with Pl. Exs. 5 (10% 2006), 6 (6% 2006), 9 (6% 2007).) These allegations would seem to qualify as prejudice. Prejudice exists where an employee loses compensation or benefits "by reason of the violation," 29 U.S.C. § 2617(a)(1)(A)(i)(I); sustains other monetary losses "as a direct result

of the violation," § 2617(a)(1)(A)(i)(II); or suffers some loss in employment status remediable through "appropriate" equitable relief, § 2617(a)(1)(B). *Reed*, 241 Fed. Appx. at 925. The defendant has not suggested differently.

The Court is not exactly sure that evidence exists, however, to associate the defendant's conduct regarding the March surgery with such alleged and future prejudice, in the form of a reduced bonus and termination. The plaintiff suffered no particular employment action as a result of the March absences, even to the extent they were never designated as FMLA. In fact, the defendant attempts to characterize any failure, to so designate the March leave, as actually enuring to the plaintiff's benefit, insofar as it resulted in more available FMLA time to be taken at a later date. The plaintiff, of course, has tried to weave the alleged interference in March into a broader story of a growing and improper contempt for plaintiff's attendance issues, which the plaintiff argues inexoribly led to the reduced bonus and ultimately termination.

Because the defendant has not moved for summary judgment based upon the prejudice element, it would seem improvident for the Court to reach out and require that the plaintiff have come forward with evidence concerning a matter not directly put in issue by the defendant's motion. The defendant has not met its preeminent burden under Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 56. Moreover, even were the matter more directly in issue, the Court would be inclined to recommend that issues of fact persist as to prejudice. If a jury believes that Barre′ was improperly unaccommodating and, was so, as a result of the plaintiff's attendance and further that such views led directly to a lesser bonus and termination, then the requisite causal connection could be justified. The plaintiff has produced evidence of Barre′′s resistence to the plaintiff's leave and accommodations, based on her health related absences alone, and not performance. (See Pl. Aff. ¶ 11; Pl. Dep. at 43, 107-08, 137; Barre′ Dep. at 34, 38-39, 41; Rama Dep. at 82-83.) The plaintiff has also produced evidence that Barre′ was the one responsible for giving her the worst

15

review and lowest bonus she had ever received. (Pl. Aff. ¶ 18; Compare Pl. Ex. 35 with Pl. Exs. 6-9.) Accordingly, the plaintiff has evidence from which a reasonable jury could conclude that Barre''s actions readily linked the defendants' interference with prejudicial and tangible injury to the plaintiff's employment and compensation.

The Court would recommend that issues of fact remain as to both elements of an interference claim as that claim might be predicated on the events surrounding the March surgery.

### C. Interference and Prejudice (May 2008 Complications)

The plaintiff contends that the defendants continued to interfere with her FMLA rights as she began experiencing complications from her surgery sometime in May, as discussed above. The defendants contend that such a claim is impossible because (a) the defendants, in fact, gave the plaintiff FMLA intermittent leave and (b) accommodated her restrictions by both permitting her to rearrange her own schedule and removing, as supervisor, the principal antagonist to the exercise of her FMLA leave, Barre'. The defendant does not make any serious argument concerning notice regarding the May 2008 health conditions.

It is undisputed that the plaintiff was placed on intermittent FMLA leave, effective June 2, 2008, as a result of these additional complications and the associated need for work-related restrictions. (Pl. Exs. 20-22.) At that time, the plaintiff admits that she was apprised of her right to either full-time or intermittent FMLA leave. (Pl. Dep. at 59.) The plaintiff elected intermittent leave. (See Pl. Exs. 20-22.) The plaintiff has put forward evidence and argument, however, that she was not, in fact, permitted to make meaningful use of it. Namely, she alleges that Barre' imposed unreasonable expectations on her performance and conditioned her ability to take intermittent leave on that performance, threatening to make her take full-time FMLA if she could not meet such expectations.

The plaintiff has created issues of fact as to the following. On May 26, after returning from her hospitalization, the plaintiff met with Barre′ to discuss her health-related restrictions. The plaintiff contends that Barre′ told her that such restrictions were unacceptable, that she had the choice of either working 100% or going on full-time FMLA leave, and that she was putting her job in jeopardy by being out. (Pl. Dep. at 43, 107-08, 137; Pl. Aff. ¶ 11; Pl. Ex. 18 at KB103). Four days later, Barre′ reduced to writing expectations for the plaintiff, which included:

- Each week with 3 full days at the properties (9 to 5 minimum)
- Attend all 5 PSR calls
- Complete or assist in completion of monthly Sales templates for all properties
- Find 5 new accounts a month with a minimum production of 30 room night each
- Minimum of 6 sales calls (visiting prospect accounts) per property

(Pl. Ex. 23; McPheeters Dep. at 65-66.). As discussed, the plaintiff had been working from a home office in Columbia, South Carolina, since the middle of 2005. These new expectations, imposed within days of the plaintiff's hospitalization for serious health issues, now required her to drive to Greenville, Charleston, or Gastonia properties three days a week, in direct contravention of the plaintiff's traveling restrictions already communicated. (Pl. Aff. ¶ 4.) The plaintiff has proffered evidence that such expectations had never previously been placed on the plaintiff or any other employee in the plaintiff's position. (Pl. Dep. at 80, 83; Rama Dep. at 84-87, 89-92; Browder Dep. at 44, 57; McPheeters Dep. at 63.) Remarkably, in the same email outlining these new expectations, Barre′ expressly stated that the plaintiff's "performance is unquestioned, only her attendance is." (Pl. Ex. 3.)

On June 6, the plaintiff indicated to McPheeters and Barre′ that her physical therapy schedule, in Columbia, was Monday, Wednesday, and Friday for one or two hours each. (Pl. Ex. 25; Pl. Aff. ¶ 13; Barre′ Dep. at 55-56.) Barre′ responded: "How will she be able to work 3 full days at the properties? We need to have a conference call with [Browder]." (Pl. Ex. 25 at KB109; Barre′ Dep. at 56.)

17

At the defendants' request, the plaintiff prepared a proposed schedule. The plaintiff has put forward evidence that the proposal was never reviewed (Barre Dep. at 47-49; Pl. Ex. 28 at KB1035) and that Barre′ reiterated his own expectations: "As discussed last in Gastonia three weeks ago, the declining economy is now dictating a stronger presence in the field from the sales force . . . . your presence in the field is critical . . . ." (Ex. 18 at 103). Barre′ provided a three-week schedule that made no accommodation for the plaintiff's need for therapy or any leave whatsoever. (Pl. Ex. 30; Barre′ Dep. at 42.)

The defendants subsequently decided to institute an "action plan" for Plaintiff. At the end of 3 weeks the defendants would review "the progress and see if this arrangement works for us as a company. If it doesn't, we can make a change to put her on full FMLA." (Pl. Ex. 34.)

Critically, on June 23, McPheeters wrote the plaintiff and continued to express the concern that the plaintiff's FMLA compliant schedule did not meet Barre′'s standards:

> As we . . . discussed [on June 20], **the Company is concerned that the schedule you created does not provide enough visits to the properties to perform to the level which the Regional Director of Sales and Marketing job requires**. However, we will implement the schedule for the next three weeks . . . to see if it meets yours and the Company needs.
>
> At the end of the three weeks, we will evaluate whether or not this schedule accomplishes the job. If it does not, then we will review your leave request and **whether to convert it to a full FMLA leave for the balance of the time available to you**.

(Pl. Ex. 39 (emphasis added)).

Lastly, the plaintiff has put forward evidence that there was some effort to force her to resign, based, in part on Barre′s antagonism. (Pl. Aff. ¶ 19.) When she brought the matter to McPheeters' attention, the plaintiff made an off-hand remark that if the defendants were trying to force her to quit, then all they would have to do was to require her to relocate. *Id*. ¶ 20. Suspiciously, two days after the plaintiff's off-hand comment, Rama, in fact, informed the plaintiff that, she had to move to Greenville because of the Company's "growth

18

plans" for the Greenville area. (Pl. Exs. 25, 41.)  It is undisputed that, prior to June 3 2008, no one had ever discussed the possibility of a relocation of the plaintiff from her home office in Columbia.  (Pl. Aff. ¶ 21; McPheeters Dep. at 45, 82-83; Barre′ Dep. at 86-87; Rama Dep. at 151.)  In spite of being devastated by the news, the plaintiff ultimately indicated to Rama that she would work to make the move as soon as possible and that she was excited.  (Pl. Ex. 45.)  The plaintiff contends that the defendants, in fact, made no effort to actually make preparations to relocate her and that the entire affair was simply a ruse to force her resignation.  (See Barre Dep. at 99-100; Pl. Aff. ¶ 25.)

The Court believes that all of this evidence would reasonably permit a jury to conclude that the plaintiff was not meaningfully allowed to use her intermittent leave.  The persistent threat of forced, full-time leave, if actual, would be serious and improper.  *See Wysong v. Dow Chemical Co.*, 503 F.3d 441, 449 (6th Cir. 2007); 29 C.F.R. § 203(d) ("An employee may not be required to take more FMLA leave than necessary to address the circumstance that precipitated the need for the leave . . . .")  McPheeters has admitted as much.  (McPheeters Dep. at 22.)

As discussed, there is evidence that Barre′′s animus towards the plaintiff's attendance contributed directly to a poor evaluation and lesser bonus.  Barre′ has been unequivocal that his problems with the plaintiff related exclusively to her FMLA-related attendance.  (Barre′ Dep. at 54, 61.)

The plaintiff also contends that the defendant failed to specifically advise her of the right to reduced-schedule leave and that such a failure constitutes actionable interference.  29 U.S.C. § 2612(b)(1) ("[L]eave . . . may be taken intermittently or on a reduced leave schedule when medically necessary.").  While the applicable regulation at that time, 29 C.F.R. § 825.301, did not expressly require that an employer notify or inform an employee of the types of available leave, courts have generally found that an employer's failure to do so constitutes interference if the employee establishes that the failure to advise rendered

19

her unable to exercise her FMLA rights in a meaningful way and thereby caused injury.[6] *See Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 143 (3d Cir.2004); *see also Ragsdale*, 535 U.S. 81, 89-90 (recognizing that an employee might have a viable interference claim where the employee could take intermittent or full-time leave; however, because the employer failed to notify the employee of her rights under the FMLA, the employee unwittingly takes full-time leave instead of intermittent leave such that she has "no leave remaining for some future emergency."); *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 162 (2d Cir.1999); *Tully-Boone v. North Shore-Long Island Jewish Hosp.*, 588 F. Supp.2d 419, 424 (E.D.N.Y. 2008) (recognizing that defendants' failure to provide notice about the options available to employee, including her right to intermittent leave, may well have affected her opportunity to exercise substantive rights under the statute.)

The question remains, however, whether the failure to advise actually prejudiced the plaintiff. If the plaintiff was already granted intermittent leave, what added advantage would the option of reduced schedule leave have accorded? Intermittent leave is defined as "leave taken in separate blocks of time due to a single qualifying reason." 29 C.F.R. § 825.203(a); Pl. Ex. 52. A "reduced leave schedule" is defined as "a leave schedule that reduces an employee's usual number of working hours per workweek, or hours per workday." *Id*. In other words, "a reduced leave schedule is a change in the employee's schedule for a period of time, normally from full-time to part-time." *Id*. The plaintiff has not expressly explained how she believes that a part-time schedule would have been more accommodating than the choice actually extended to her in the ability to take intermittent

---

[6] The plaintiff cites this Court's decision in *Pellegrino v. UPS*, 2008 WL 1808576, at *3 (D.S.C. 2008), in support. Because of the procedural posture (motion to amend and to dismiss) and facts of that case, however, the undersigned did not reach the precise question concerning what the regulations require, in regards to advising of specific types of leave, to the same extent now demanded by this case.

leave.  But, it would seem to follow that if she had been placed on a part-time schedule, it would have been more difficult for the defendants to have imposed the types of full-time specific expectations Barre′ instituted.

To all of this, the defendants contend that Barre′ was removed as the plaintiff's supervisor, effective May 30, 2008, such that any complaints she might have about his resistence and alleged disdain for her leave and schedule were rendered moot.  There are multiple problems with this position.  For one, there seems to be some issue of fact as to when Browder became supervisor, either early or late June.  The plaintiff has put forward evidence that Browder became the plaintiff's supervisor, in name only, sometime in late June.  (McPheeters Dep. at 73, 117; Pl. Dep. at 62-63, 68, 108-09.)  Moreover, the plaintiff has produced substantial evidence that the new expectations set by Barre′ continued to be enforced even after Browder became supervisor and, further, that Barre′ himself remained personally involved in enforcing them, evaluating the plaintiff's performance, and otherwise influencing matters related to the plaintiff's leave.  (See Rama Dep. at 101; Pl. Dep. at 43-44, 135-36; Pl. Exs. 12, 27, 48; Pl. Aff. ¶¶ 15, 18.)

In sum, the plaintiff has created issues of fact concerning the defendants' two primary defenses – that Barre′ 's alleged prejudice was neutralized and that the plaintiff was able to make her own schedule.  The plaintiff's evidence, however, would permit a reasonable jury to conclude that, while Barre′ was replaced and the plaintiff was invited to prepare a schedule, both actions were, in fact, sham remedies that never effectively protected the plaintiff's rights in her FMLA leave.

## II.    FMLA Retaliation

The plaintiff has also pled a claim for retaliation.  The second FMLA prohibition makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Courts have classified violations under this section as violations of a

"proscriptive right," also known as "retaliation" or "discrimination" claims. *Yashenko v. Harrah's NC Casino*, 446 F.3d 541, 546 (4th Cir. 2006). To establish a claim for retaliation under the FMLA, the plaintiff may rely on either a modified version of the *McDonnell Douglas* proof mechanism, *see id.* at 550-51*; Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001), or make recourse to ordinary principles of proof, using direct or indirect evidence, as well.[7]  *See Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996). The plaintiff has suggested that her case survives summary judgment regardless of proof scheme.

Under *McDonnell Douglas*, a plaintiff may make out a *prima facie* case of retaliation by establishing that (1) the plaintiff engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action. *Dodgens v. The Kent Mfg. Co.*, 955 F. Supp. 560, 566 (D.S.C. 1997). The latter of these elements may in some cases be demonstrated by the temporal proximity between the protected activity and the adverse

_____

[7]  As the Court has noted before, it does not appear that the Fourth Circuit has ever expressly held that a plaintiff may rely on the ordinary principles of proof in an FMLA case, it is only a logical conclusion and one consistent with the court's treatment of retaliation cases under every other related statutory scheme. *See, e.g.*, *Rhoads v. F.D.I.C.,* 257 F.3d 373 (4th Cir. 2001) (ADA); *Burns*, 96 F.3d 728 (ADEA); *Diamond v. Bea Maurer, Inc.*, 128 Fed. Appx. 968 (4th Cir. 2005) (Title VII). At least one other district court in this circuit has agreed. *See Wemmitt-Pauk v. Beech Mountain Club*, 140 F. Supp. 2d 571, 580 (W.D.N.C. 2001). Moreover, in this District, FMLA retaliation claims are analyzed in accordance with the principles used in Title VII retaliation claims. *See Dodgens*, 955 F. Supp. at 566.

It should also be noted that in the wake of *Desert Palace, Inc. v. Costa*, 539 U.S. 90, (2003), other jurisdictions have permitted plaintiff's to use the mixed-motive framework to demonstrate that retaliation for taking FMLA leave was a "motivating factor" in the termination decision, even if their exist other legitimate, non-discriminatory reasons for termination, like performance. *See Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 333 (5th Cir. 2005).

Regardless of the articulation, in this case, the plaintiff is not bound to make his proof through the *McDonnell Douglas* scheme exclusively, nor is he required, necessarily, to prove that the nondiscriminatory reasons for her termination were pretext. He may use ordinary principles of proof to demonstrate that her FMLA leave was a motivating factor in the decision to terminate his employment. *See id*.

action. *See Yashenko v. Harrah's NC Casino Co.*, 352 F. Supp. 2d 653, 661-62 (W.D.N.C. 2005); *Blankenship v. Buchanon Gen'l Hosp.*, 140 F. Supp. 2d 668, 674 (W.D.Va. 2001).

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendants to produce evidence of a "legitimate, non-discriminatory reason" for the termination. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). If the defendants meet this burden, then the plaintiff must show that the explanation for the decision to terminate her was, in fact, a pretext for intentional retaliation. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000).

The defendant does not contest the plaintiff's ability to establish a *prima facie* case.[8] Instead, the defendants simply proffer their legitimate, non-discriminatory reason for the plaintiff's termination. Namely, the defendants contend that the plaintiff's employment was terminated not for any performance or FMLA-related reasons but because of declining business in the struggling economy, which forced them to eliminate seventy-one positions and, further, to decline to refill fifty nine more, from approximately February 2008 to June 2009. (Rama Aff. ¶ 6; McPheeters Aff. ¶ 3.) It is undisputed that such economic concerns are legitimate and nondiscriminatory reasons for a layoff. *See Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 513 (4th Cir.1994) ("In contrast to plaintiffs' proffers, Marvel provided substantial support for its claim that the layoffs here were motivated purely by economic concerns."). Accordingly, the defendant has met its burden of production at the second stage of *McDonnell Douglas*.

Because the defendant has proffered a legitimate, non-discriminatory reason for termination, the plaintiff bears the burden of demonstrating that the real reason for discharge is an illegal one. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133,

---

[8] Regardless, it is undisputed that the plaintiff engaged in protected activity by using FMLA leave; suffered an adverse employment activity, in her termination; and that her employment was actually terminated while she was entitled to take leave, such that the temporal proximity would readily support the third element of her *prima facie* case.

142-43 (2000). As is most common, the plaintiff attempts to satisfy this burden by suggesting that the defendants' proffered reasons are pretextual or false. *See id.* at 144.

The plaintiff has put forward some evidence of inconsistent explanations (Compare Pl. Ex. 36, Interrog. No. 1 with McPheeters Dep at 100-01); confusion over the identity of the decision-maker (Compare Pl. Ex. 36, Interrog. No. 2 with McPheeters Dep. at 166); disparate application of performance standards to the plaintiff and Barre' (see Barre' Dep at 109-10; Rama Dep. at 47; Browder Dep. at 75; McPheeters Dep. at 128); timing of the plaintiff's poor evaluation (Pl. Aff. ¶ 18); among numerous others, as evidence of pretext sufficient to survive summary judgment. The Court is less than sure that the evidence actually implies abject falsity in the way the plaintiff actually contends, although much of it raises a degree of probative suspicion as addressed below.

The Court actually believes that the plaintiff's evidence is more naturally considered using ordinary proof principles. It is of no advantage for the plaintiff to ply awkwardly the mechanics of *McDonnell Douglas* and force consideration of a plaintiff's case under its scheme, where the evidence has probative strength in itself. The *McDonnell Douglas* scheme was developed precisely with the understanding that effective direct and circumstantial evidence of discrimination and retaliation would be difficult to develop because so often the private intentions of decisionmakers are not easily plunged. In this District, the Honorable Joseph Anderson has agreed with, and adopted, the undersigned's view that FMLA retaliation claims may be considered using ordinary principles of proof and applying the mixed-motive framework to demonstrate that retaliation for taking FMLA leave was a "motivating factor" in the termination decision, even if their exists other legitimate, non-discriminatory reasons for termination, like business economics or even performance. *See Sullivan v. Cato Corp.*, 2006 WL 644469, at *6 (D.S.C. March 09, 2006).

Accordingly, the Court believes that the following evidence would circumstantially support a jury verdict for FMLA retaliation, were it believed:

- the plaintiff was entitled to, and took, FMLA qualifying leave

- Barre' and McPheeters expressed varying degrees of resistence to her use of intermittent leave and modified schedule (Pl. Ex. 39; Pl. Dep. at 43-44, 135-36);

- the plaintiff was transferred to Greenville, in spite of her health-related travel restrictions and only, and coincidentally, after she had sarcastically implied that such a transfer would force her resignation (Pl. Aff. ¶¶ 20, 22; Pl. Exs. 25, 41; Pl. Dep. at 107);

- Barre' and McPheeters were either a formal part of the decision to terminate the plaintiff or had the ability to influence as an actual decisionmaker, even if not the formal one (Pl. Ex. 36, Interrog. No. 2 (identifying McPheeters as a decisionmaker); Rama Dep. at 106-07 & Barre Dep. at 15 (Barre' 's influence on Rama); Pl. Exs. 30 & 39 (Barre' 's influence on McPheeters); *see Hill v. Lockheed Martin Logistics Management., Inc.*, 354 F.3d 277, 291 (4th Cir. 2004);

- the strong temporal proximity present, insofar as the plaintiff was actually entitled to FMLA leave at the time she was terminated.[9]

Of course, it cannot be said that the plaintiff has direct evidence of retaliation.[10]  She does have strong circumstantial evidence that there was significant resistence to the exercise of her FMLA rights and that shortly thereafter, her employment was terminated.

---

[9]  The defendant attempts to minimize the temporal proximity component of the plaintiff's retaliation claim by arguing that termination came two and half months after her eligibility for FMLA leave.  First, two and a half months is not a long period of time. Especially, in which to determine a colorable rationalization for the termination of an employee without any performance past.  Second, the defendants' counterpoint seems somewhat muted by the fact that the plaintiff was actually still entitled to take FMLA leave at the time of her termination, such that a reasonable jury could interpret the defendants' actions as a response to an actual and ongoing financial burden.

[10]  Direct evidence is "conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Hill, 354 F.3d at 284-85; Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir.1995) *abrogated in part by Desert Palace, 539 U.S. 90*.  It is evidence that the employer "***announced, admitted, or otherwise unmistakably indicated*** that [the forbidden consideration] was a determining factor . . ." *Cline v. Roadway Express, Inc.*, 689 F.2d 481, 485 (4th Cir.1982) (emphasis added) (citing *Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109, 1113 (4th Cir.)).  In other words, there has to be a nexus between the offensive remark and Plaintiff's eventual termination for that remark to comprise direct evidence of discriminatory discharge." *Eruanga v. Grafton School, Inc.*, 181 F. Supp. 2d 514, 521 (D. Md. 2002).  The plaintiff must present, "direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion." *Fuller*, 67 F.3d at 1142 (citations omitted).  The plaintiff's evidence does not go so far.

Her principle evidentiary hurdle lies in connecting that resistence to Rama's decision to actually eliminate her position, thereby terminating her employment. The Court believes that the threshold showing already made is enough evidence to survive summary judgment, however.

As implied, the parties have spent significant energy debating the veracity and details of the defendants' economic position during the relevant period and after the plaintiff's termination. Ultimately, the Court believes that such an inquiry is unnecessary at this stage to resolve whether the claim should proceed. Even if the defendants were laboring under economic duress as proffered and even to the extent they were forced to resort to legitimate reduction in force or series of layoffs as a result, the plaintiff has come forward with evidence from which a reasonable jury could conclude that, in her case, retaliation was in fact a motivating factor. All this evidence in conjunction with the simultaneous occurrence of the exercise of the plaintiff's FMLA leave and her termination, when taken together and viewed making inferences in favor of the plaintiff, create genuine issues of fact in regards to the plaintiff's FMLA retaliation claim.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendants' motion for summary judgment [Doc. 47] be DENIED as to all claims pending against them.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

March 18, 2010
Greenville, South Carolina

26